UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| ARTHUR ALLEN NAPIER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 16-124-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security[1], | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of cross-motions for summary judgment filed by Plaintiff Arthur Allen Napier ("Napier") [Record No. 11] and Defendant Nancy A. Berryhill, Acting Commissioner of the Social Security Administration ("the Commissioner"). [Record No. 12] Napier alleges that the Administrative Law Judge ("ALJ") erred by failing to find that his obesity was a severe impairment and that the ALJ's decision was not supported by substantial evidence. Napier requests an award of benefits in his favor or, alternatively, that the matter be remanded for further administrative proceedings.

In response, the Commissioner contends that the issue of whether Napier's obesity was severe is not legally relevant because the ALJ considered all impairments when evaluating his residual functioning capacity ("RFC"). But, assuming that the issue is relevant, the Commissioner asserts that the ALJ properly accounted for Napier's obesity in his findings. Additionally, the Commissioner argues that the ALJ's decision is supported by substantial

---

[1]   Nance A. Berryhill is now the Acting Commissioner of Social Security and is substituted in this action pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

-1-

evidence.  For the reasons that follow, the Commissioner's motion will be granted and the relief that Napier seeks will be denied.

## I.

On December 11, 2012, Napier filed applications for a period of disability insurance benefits and for supplemental security income, alleging a disability beginning July 25, 2011. [Administrative Transcript, "Tr.", 233-36, 237-45]  These applications were denied, initially and upon reconsideration.  [Tr. 134-37, 146-48, 153-55]  Napier participated in an administrative hearing before the ALJ during which he amended the alleged onset date of his disability to July 25, 2012.  [Tr. 33, 35]  Thereafter, the ALJ issued a written opinion, concluding that Napier was not disabled.  [Tr. 11-25]  Napier sought but was denied review by the Appeals Council.  [Tr. 1]  The case is ripe for this Court's review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

Napier was 32 years' old on the date of the alleged onset of his disability.  [Tr. 38]  At the time of the administrative hearing, he lived in a second-floor apartment at his parents' home.  [Tr. 37]   Napier completed high school, but attended special education classes.  [Tr. 38] He testified that he cannot read, write, or spell, and only passed classes because he was good at football.  [Tr. 39]  However, Napier is able to count money and make change.  [Tr. 40] He was previously employed by a coal mine, where he worked a rail runner and watched a head drive[2], and by a saw mill, where he worked as a laborer.  [Tr. 42-45]  Napier was involved in a car accident in July 2011 that caused a number of injuries.  [Tr. 46-47]  He contends that

---

[2]   This position involved watching coal moving on a conveyer belt and shoveling it back onto the belt when it fell off.  [Tr. 43]

he is unable to work due to problems with his right knee, hip, and pelvis; chest injuries; vision problems; mental issues; and seizures.  [Tr. 45-46, 134]

Napier was treated at the Daniel Boone Clinic in May 2011.  [Tr. 368]  He reported chest pain, midepigastric pain, and a sour taste in his mouth.  [*Id.*]  Napier was given Prilosec and referred to cardiology for "possible stress test".  However, a treatment note indicated "consider malingering."  [*Id.*]  The physician described Napier as well-appearing and "well-nourished in no distress."  [*Id.*]  During another visit in May, Napier complained of chest pain, shortness of breath, and a non-productive cough.  He informed the physician that he smoked two packs of cigarettes per day.  [Tr. 370]  Napier was advised to continue Motrin and discontinue smoking.  [*Id.*]  The physician's notes reported likely musculoskeletal pain.  [*Id.*]

Following the July 2011 car accident, Napier had a number of CT scans performed.  The CT scan of his chest with IV contrast showed suboptimal opacification of the aorta and the supraaortic vessels.  [Tr. 391-92] Additional observations included a small amount of left-sided effusion and a small amount of left anterior pneumothorax together with multiple depressed fractures of the anterior ribs.  [Tr. 392]  Additionally, the scan revealed a comminuted fracture of a right anterior rib and a nondisplaced fracture of the manubrium of the sternum with a small amount of retrosternal bleeding.  [*Id.*]

The CT scan of Napier's knee reflected a mild comminuted fracture involving the superior pole of the patella.  [Tr. 398]  Clinical impressions included contusion of the heart and lung, open fracture of the patella, fracture of the left 2nd-6th ribs, fracture of the right 1st rib, and obstruction of the right subclavical and pneumnothorax.  [Tr. 405]

Napier was seen at the Appalachian Regional Healthcare center on May 15, 2011.  He complained of chest pain at that time.  [Tr. 420, 424]  His physical exam generally

demonstrated normal results, but Napier was diagnosed with acute bronchitis. [Tr. 423] The physician described him as being alert and oriented. [*Id.*]

Napier was treated at Holston Valley Hospital from July 25, 2011, through August 2, 2011. [Tr. 438] He was diagnosed with a right nondisplaced open superior pole of patellar fracture, a right nondisplaced transverse acetabular fracture, cardiac contusion, multiple rib fractures, and lung contusion. [Tr. 438] The physician noted at this hospital noted that Napier was "alert and oriented and answering questions appropriately." [Tr. 441] Following a physical examination, the physician determined that his acetabular and patellar fractures should be treated conservatively. [*Id.*]

On March 2, 2013, Philip Collis, M.D. examined Napier in connection with a disability determination. [Tr. 485] Napier's complained of bad eyesight, seizures, right knee and hip pain, and mental issues. [*Id.*] He reported knee and hip pain following his car accident; mental problems including panic attacks and violent ideation; and seizures that began after the accident. [*Id.*] Napier stated that he had been seeing a psychiatrist monthly, and this helped with his mental status. [*Id.*]

Naapier informed Dr. Collis that he: (i) could lift 20 to 25 pounds once, but not much weight repetitively; (ii) could take care of his personal hygiene and did some cleaning, but did not cook or shop for himself; (iii) drove and managed his own money; and (iv) could walk for 50 yards, stand for five minutes without having to sit, and sit for ten minutes without having to move. [Tr. 485-86] The physician found slight decreased strength in Napier's right lower extremity and mild-to-moderate level of limitation in labor-intensive job-related activities due to the conditions in his right knee. [Tr. 488] Otherwise, he did not find any abnormalities, either physical or in Napier's affect. [*Id.*]

William R. Rigby, Ph.D evaluated Napier on March 12, 2013, for a disability determination. [Tr. 490] Napier reported worsening anxiety and depression for which he was taking Prozac and Klonopin. [*Id*.] Dr. Rigby noted that Napier "elaborate[ed] on his limitations in a circumstantial manner and present[ed] a theatrical appearance of distress by glancing around the clinic and blowing air." [Tr. 491] Dr. Rigby ultimately concluded that Napier appeared free of major mental illness. [Tr. 493] He found that Napier's alleged anxiety and depressive systems appeared "mild-to-moderate in degree." [*Id*.] Rigby further determined that Napier did not have difficulty in understanding, retaining, and following simple instructions and that he had no impairment which prevented him from sustaining concentration and completing tasks. [Tr. 494] Dr. Rigby also found moderate impairment in social interactions and in adapting and responding to the pressures of normal day-to-day work activities. [*Id*.]

On June 25, 2014, Napier saw Dr. Jose Echeverria. [Tr. 576] At that time, he was diagnosed with anxiety, depression, and lower back pain, and prescribed Xanax and Ultracet. [*Id*.]

On July 18, 2014, Dr. Nagabhushanam Bollavaram examined Napier for complaints of a cough associated with sputum production for two months. [Tr. 572] He also reported shortness of breath due to exertion, chest tightness, and wheezing. [*Id*.] Dr. Bollavaram suspected asthma or chronic obstructive pulmonary disease (COPD). [Tr. 574]

Napier was also seen and treated at the Harlan Appalachian Region Healthservices Emergency Room in September 19-20, 2014, for complaints of chest pain radiating to his neck as well as shortness of breath. [Tr. 592] His diagnosis was otherwise normal. [Tr. 593] Napier was alert and oriented, during his physical exam and demonstrated normal strength and range

of motion. [Tr. 626] At the time of this visit, Napier was diagnosed with retrosternal pain and chest pain. [*Id.*]

Napier underwent counseling on September 26, 2014, at the Cumberland River Comprehensive Care Center. [Tr. 583] He reported depression, loss of appetite, trouble sleeping, decrease in physical activity, fatigue, feeling worthless, impaired concentration, and elevated or irritable mood. [*Id.*] He was found to be suffering from depression, anxiety, grief, and PTSD. [Tr. 586].

From October 29, 2013, through March 27, 2014, Napier was seen at the UK Digestive Health/Kentucky Clinic where he was treated for Hepatitis C. [Tr. 636-50] On January 30, 2014, Napier's BMI was 33.51. As a result, he was assessed as being obese. [Tr. 643] On March 27, 2014, Napier was described as having no adverse cardiovascular, respiratory, or musculoskeletal conditions. [Tr. 646] However, he claimed abdominal pain and vomiting blood. [*Id.*] Medical observations and conclusions included Hepatitis C, drug dependence, chronic pain syndrome, and obesity. [Tr. 648]

The ALJ determined that Napier had severe impairments of: status post right hip transverse acetabular fracture, status post right patellar fracture, COPD, Hepatitis C with gastritis, anxiety disorder, affective disorder, and polysubstance addiction disorders of cannabis, opiates, and Xanax. [Tr. 13] He noted that Napier was obese, based on the report of his BMI in January 2014, but concluded that his obesity was not a severe impairment because Napier had "not alleged symptoms related to obesity." [Tr. 19] He then concluded that Napier did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment in 20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 419.926. [Tr. 19]

After considering the evidence of record, the ALJ determined that Napier had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). [Tr. 21] Although Napier could not perform any past relevant work, the ALJ found that there were jobs existing in significant numbers in the national economy that he could perform. Thus, the ALJ concluded that Napier was not disabled from the alleged onset date through the date of his decision. [Tr. 24-25]

## II.

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007) (citing 42 U.S.C. § 423(d)(1)(A)). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)). If the claimant satisfies the requirements of the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

A claimant must first demonstrate that he is not engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the claimant must show that he suffers from a severe impairment or a combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment that is expected to last for at least twelve months and that meets or equals a listed impairment, he will be considered disabled without regard to age, education, and work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d).

Fourth, if the claimant has a severe impairment but the Commissioner cannot make a determination of the disability based on medical evaluations and current work activity, the Commissioner will review the claimant's RFC and relevant past work to determine whether he can perform his past work.  If he can, he is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f).

Under the fifth step of the analysis, if the claimant's impairments prevent him from doing past work, the Commissioner will consider his RFC, age, education, and past work experience to determine whether he can perform other work.  If he cannot perform other work, the Commissioner will find the claimant disabled.  20 C.F.R. §§ 404.1520(g), 416.920(g). "The Commissioner has the burden of proof only on 'the fifth step, proving that there is work available in the economy that the claimant can perform.'"  *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

This Court's review is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the ALJ employed the proper legal standards in reaching his decision.  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  Substantial evidence is such relevant evidence as reasonable minds might accept as sufficient to support the conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).  The Commissioner's findings are conclusive if they are supported by substantial evidence.  42 U.S.C. § 405(g).

### III.

Napier first contends that the ALJ erred at the second step of the analysis by failing to conclude that Napier's obesity was a severe impairment.  Napier's January 30, 2014, records

report a BMI of 33.51, which places him in the least severe category of obesity (Level 1) under Social Security Ruling 02-1p.  [Tr. 643]; [Doc. 11-1, p. 11]  Napier then discusses his other diagnoses, including chest pain, COPD, and various fractures.  He asserts that these are "precisely the kind of impairments" that are complicated by obesity.  [Doc. 11-1, p. 14]  Specifically, counsel argues that obesity "undoubtedly" exacerbates Napier's hip and knee pain, COPD, and inability to sleep.  [*Id.*]

Napier relies exclusively on Social Security Ruling 02-1p in making this argument.  After defining the levels of obesity, the ruling describes obesity as a "risk factor that increases an individual's chances of developing impairments in most body systems" and "commonly leads to, and often complicates, chronic diseases of the cardiovascular, respiratory, and musculoskeletal body systems."  Social Security Ruling 02-1p, 2002 WL 3486281.  It states that obesity will qualify as a severe impairment "when, alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities."  *Id*.

In *Nejat v. Comm'r*, 359 Fed. Appx. 574 (6th Cir. 2009), the Plaintiff argued that the ALJ had erred by failing to find that his obesity was a severe impairment.  The Sixth Circuit first noted that "'Social Security Ruling 02-1p does not mandate a particular mode of analysis' but merely directs an ALJ to consider the claimant's obesity, in combination with other impairments, at all stages of the sequential evaluation."  *Id*. at 577 (quoting *Bledsoe v. Barnhart*, 165 Fed. Appx. 408, 411-12 (6th Cir. 2006)).  The Plaintiff's argument that his obesity was a severe impairment was based "entirely on the 'Class 1 obesity' diagnosis" of one of the doctors.  And that was the only obesity diagnosis in the record.  *Id*.  The ALJ acknowledged the obesity diagnosis, but ultimately concluded that the impairment was not

severe. *Id.* Based on the Plaintiff's "failure to list obesity in his application and the scant evidence of obesity," the court concluded that the ALJ had properly declined to classify the Plaintiff's obesity as a severe impairment. *Id.*

Here, the ALJ correctly declined to classify Napier's obesity as a severe impairment. The ALJ specifically references obesity, indicating that he considered it as required by Social Security Ruling 02-1p. However, he observes that "[Napier] has not alleged symptoms related to obesity. I find his obesity non-severe." [Tr. 19] Likewise, the record does not indicate that Napier argued that he was disabled due to his obesity. During the administrative hearing, the ALJ listed the bases for Napier's alleged disability as: "a right knee fracture, right hip fracture, pelvis problems, . . . chest injuries, . . . vision problems, . . . seizures, . . . and mental issues . . ." as well as some problems hearing. [Tr. 45-46] He then asked Napier if he had any other conditions. Napier responded that he suffered from Hepatitis C and had been coughing up blood. [Tr. 46] However, he did not mention obesity when given the opportunity to assert other medical problems or physical conditions that prevented him from working.

Additionally, the record does not reflect symptoms resulting from obesity and Napier does not explain what effect, if any, his obesity has had on his other conditions. While Napier cites the January 2014 obesity diagnosis and lists his other conditions, he does not reference any evidence demonstrating that his obesity has had any impact on the other conditions. Instead, he merely claims that obesity exacerbates his other conditions in conclusory terms. As a result of the lack of evidence regarding obesity and the claimant's failure to argue it before the ALJ, the ALJ did not err in declining to classify obesity as a severe impairment.

But even if the ALJ did err by not classifying Napier's obesity as a severe impairment, this alone would not constitute reversible error. *Nejat*, 359 Fed. Appx. at 577 (6th Cir. 2009)

(quoting *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)).  At step two, the ALJ is required to assess whether the claimant has a severe impairment, which is a "*de minimis* hurdle" that is "intended to screen out totally groundless claims." *Id*. at 576 (citations omitted).  After determining whether the claimant has any severe impairments at step two, the ALJ must ultimately consider all of the claimant's impairments during the remaining steps of the disability determination.  *Id*.  (citing Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *5)).  As long as the ALJ considered the appropriate impairments when determining the claimant's RFC, it is irrelevant whether he categorized a particular impairment as "severe." *See Maziarz*, 837 F.2d at 244 (concluding that any step two error was harmless because the agency completed the remaining steps of the disability determination and considered the claimant's impairments in determining his residual functioning capacity); *Fisk v. Astrue*, 253 Fed. Appx. 580, 584 (6th Cir. 2007) (finding it "unnecessary to decide whether the ALJ erred in classifying the impairments as non-severe at step two" because the ALJ accounted for the claimant's impairments in determining his residual functioning capacity).

In the present case, any error in determining whether Napier's obesity was a severe impairment was harmless.  At the second step, the ALJ discussed Napier's impairments at length, and mentioned obesity directly.  He went on to conduct a thorough analysis in the remaining steps, including a detailed discussion of Napier's RFC in which he considered Napier's impairments, including his mobility, hip and knee pain, and chest problems.  The ALJ thus considered the relevant impairments in his RFC findings and these findings encompassed any limitations that Napier's obesity may have imposed.  Accordingly, the ALJ sufficiently addressed Napier's impairments at the RFC step and any error relating to his evaluation of obesity at the second step was harmless.

Napier also argues that the ALJ's determination that he is not disabled is not supported by substantial evidence. The basis for this contention is unclear because Napier makes this argument only in a skeletal, conclusory fashion. He merely recites the standard of review regarding substantial evidence and reiterates the conditions from which he suffers without attempting to explain how these conditions render him disabled. Accordingly, this issue is waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.").

In addition to not being raised properly, Napier's argument lacks merit because there is substantial evidence to support the ALJ's decision. The ALJ concluded that Napier was not disabled because he had the residual functioning capacity to perform light work with stated limitations and could perform jobs existing in the national economy. While there is evidence relating to Napier's conditions, the record lacks evidence showing that these conditions impair him so severely as to render him disabled.

Napier testified that he is generally able to take care of himself without assistance, and able to go to and from his second floor apartment as needed. [Tr. 37, 62] He informed Dr. Collis that he is able to life objects, walk, and sit for periods of time, with certain limitations. [Tr. 485-86] Additionally, Dr. Collis found that Napier generally had full range of motion, with some limitations in his knee. [Tr. 488] Dr. Collis ultimately concluded that Napier had "mild-to-moderate level of limitation in labor-intensive job-related activities due to his injury to his right knee and a mild level of limitation in ADLs relating to his right knee." [*Id.*]

There is also substantial evidence supporting the ALJ's findings regarding Napier's mental capacity. Multiple physicians reported that Napier was mentally functional during his examinations, describing him as well-appearing, alert, oriented, and able to answer questions. [Tr. 368, 441] Dr. Collis acknowledged that Napier was slightly anxious, but stated that he had "normal speech and affect" and that "[h]is thought process [was] clear." [Tr. 487] Additionally, although Napier cannot read or write, he testified that he is able to count money. [Tr. 40] While Napier has been diagnosed with anxiety and depression, Dr. Rigby found that he did not have any difficulty in understanding, retaining, and following simple instructions and that he had no impairment preventing him from sustaining concentration and completing tasks. [Tr. 494] This evidence is sufficient to support a conclusion that Napier is not disabled.

### IV.

For the reasons outlined abovve, it is hereby

**ORDERED** as follows:

1. The Commissioner's Motion for Summary Judgment [Record No. 12] is **GRANTED**.

2. The Plaintiff's Motion for Summary Judgment [Record No. 11] is **DENIED**.

3. ALJ Roger Lott's decision will be **AFFIRMED** by separate judgment issued this date.

This 1st day of March, 2017.



Signed By:
*Danny C. Reeves* DCR
United States District Judge